**LASALLE BANK NATIONAL ASSOCIATION, a/k/a Lasalle National Bank, as Trustee and Lasalle National Bank, as Trustee Under the Pooling and Servicing Agreement Dated June 1, 1999, Series 1999–2, Petitioners,**

v.

**Lorae WHITE and Gerald Geistweidt, Respondents.**

**No. 06–1016.**

Supreme Court of Texas.

Dec. 21, 2007.

Rehearing Denied March 28, 2008.

L. Frank Oliver, Lindsay Lee Lambert, Marc O. Knisely, Henry A. Jakob and Louis Andrew Oliver, for Lasalle Bank National Association.

A. Gerald Geistweidt, for Lorae White.

Rebekah Marie Geistweidt, for Gerald Geistweidt.

PER CURIAM.

The Texas Constitution prohibits homestead property designated for agricultural use from being pledged to secure a home-equity loan, and mandates forfeiture of all principal and interest for loans so secured. In this case, a borrower obtained a home-equity loan secured by agricultural homestead property, disbursed a portion of the proceeds at closing to pay off constitutionally permissible purchase-money and tax liens (the "refinance portion"), and kept the remaining balance (the "cash-out portion"). The debtor defaulted on the note, and the trial court declared the entire debt, and the bank's lien, invalid. A divided court of appeals affirmed. 217 S.W.3d 573, 579. We hold that the forfeiture penalty does not preclude the lender's recovery of the refinance portion of the loan proceeds that were used to pay the debtor's constitutionally permissible pre-existing debt because the lender was equitably subrogated to the prior lienholders' interests. Accordingly, we affirm in part, and reverse in part, the court of appeals' judgment.

Lorae White executed a home-equity note, later assigned to LaSalle Bank,[1] in

1. We refer to the petitioner, LaSalle Bank National Association, a/k/a LaSalle National

the principal amount of $260,000. The note recited that the transaction was an "extension of credit," as defined by article XVI, section 50(a)(6) of the Texas Constitution. The note was secured by a lien against 10.147 acres of White's 53.722–acre homestead property. At the time of disbursement, the lender used $185,010.51 of the loan proceeds to pay off the valid purchase-money lien against the total acreage, and another $9,410.96 to pay a state property-tax lien (the "refinance portion"). The remainder after closing costs, $57,518.50, was paid directly to White (the "cash-out portion"). White failed to make her first payment on the loan, paid only five of the monthly payments due during the first year, and thereafter stopped making payments altogether. When LaSalle filed an application for a home-equity loan foreclosure, White filed this suit seeking a declaratory judgment that the bank had forfeited all principal and interest because the loan violated the Texas Constitution.[2]

After a bench trial, the trial court found that the debt was secured by homestead property designated for agricultural use in violation of the Texas Constitution and signed a judgment quieting title free and clear of any liens or claims asserted by LaSalle. The court of appeals affirmed, holding that the Constitution mandated forfeiture of the prohibited loan and prohibited equitable subrogation for the refinance portion of the loan proceeds used to pay White's pre-existing homestead debt. *Id.* We disagree that the Constitution abrogates lenders' equitable subrogation rights under the common law.

Bank, as Trustee and LaSalle National Bank, as Trustee Under the Pooling and Servicing Agreement dated June 1, 1999, Series 1999–2, as "LaSalle Bank."

2. Respondent Gerald Geistweidt was added to the suit after White conveyed an interest in the property to him.

For over 175 years, Texas has carefully protected the family homestead from foreclosure by limiting the types of liens that can be placed upon homestead property. Texas became the last state in the nation to permit home-equity loans when constitutional amendments voted on by referendum took effect in 1997. Such loans permit homeowners to use the equity in their home as collateral to refinance the terms of prior debt and secure additional loans at rates more favorable than those for consumer loans. Although home-equity lending is now constitutionally permissible, article XIV, section 50(a)(6) of the Texas Constitution still places a number of limitations on such lending. Relevant to this appeal, the Constitution prohibits home-equity loans from being "secured by homestead property designated for agricultural use." TEX. CONST. art. XVI, § 50(a)(6)(I).

LaSalle does not here dispute the agricultural designation of White's homestead property or that its home-equity loan to White violated the constitutional prohibition. Nor, for purposes of this appeal, does LaSalle challenge its forfeiture of principal, interest, and liens related to the cash-out portion of the loan.[3] LaSalle does contend, however, that it is entitled to an equitable lien on White's homestead for money that it disbursed to pay constitutionally valid indebtedness.

■ Texas has long recognized a lienholder's common law right to equitable subrogation. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 661 (Tex.1996); *Faires v. Cockrill*, 88 Tex. 428, 31 S.W.

3. When a home-equity loan violates the terms of section 50(a)(6), section 50(a)(6)(Q)(x) provides that the lender forfeits the principal and interest, while section 50(e) discusses forfeiture of liens.

190, 194 (1895); *Oury v. Saunders*, 77 Tex. 278, 13 S.W. 1030, 1031 (1890). The doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor. *First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex.1993) (citing *Faires*, 31 S.W. at 194). The doctrine of equitable subrogation has been repeatedly applied to preserve lien rights on homestead property. *See, e.g., Benchmark*, 919 S.W.2d at 661; *Farm & Home Sav. & Loan Ass'n v. Martin*, 126 Tex. 417, 88 S.W.2d 459, 469–70 (1935). If applied in this case, LaSalle's payment of the balance of the purchase-money mortgage and the accrued taxes on White's property would entitle it to assume those lienholders' security interests in the homestead. White contends, though, and the court of appeals held, that article XVI, section 50(e) of the Texas Constitution abrogates all equitable subrogation rights, including those that arise from payment of constitutionally valid debts. 217 S.W.3d at 578–79. We disagree.

■ Article XVI, section 50(e), in its entirety, provides:

A refinance of debt secured by a homestead and described by any subsection under Subsections (a)(1)-(a)(5) that includes the advance of additional funds may not be secured by a valid lien against the homestead unless:

(1) the refinance of the debt is an extension of credit described by Subsection (a)(6) of this section; or

(2) the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.

TEX. CONST. art. XVI, § 50(e). When interpreting the Texas Constitution, we "rely heavily on its literal text and must give effect to its plain language." *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex.2000); *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex.1997). Section 50(e) contains no language that would indicate displacement of equitable common law remedies was intended, and we decline to engraft such a prohibition onto the constitutional language. LaSalle's equitable subrogation claim does not derive from its contractually refinanced debt and accompanying lien, for which section 50(e) mandates forfeiture. Instead, LaSalle's claim arises in equity from its prior discharge of constitutionally valid purchase-money and tax liens. By definition, equitable remedies apply only when there is no remedy at law, and the legal forfeiture that article 50(e) imposes does not destroy the well-established principle of equitable subrogation.

We have honored equitable subrogation claims against homestead property when a refinance, even though unconstitutional, was used to pay off valid liens. *See Benchmark*, 919 S.W.2d at 661. In *Benchmark*, the homeowners borrowed money from Benchmark Bank's predecessor to pay federal taxes and signed a note giving the bank a deed of trust that purported to create a lien against the homestead. When the homeowners defaulted and the bank sought to foreclose the lien, the homeowners claimed the lien was invalid because the then-existing version of article XVI, section 50 did not specifically identify federal tax liens as a valid indebtedness against homestead property. We held that, under the Supremacy Clause of the United States Constitution, the IRS could obtain and enforce a federal tax lien against Texas homestead property. *Id.* at 660. We further held that Benchmark was equitably subrogated to the federal tax lien against the homestead, even though the Texas Constitution did not recognize

the validity of a federal tax lien against the property and the Supremacy Clause did not require us to do so when the IRS no longer held the lien. *Id.* at 661. We emphasized that, "[o]nce valid, the lien does not become invalid against the homestead simply because the original debt has been refinanced." *Id.* To hold otherwise, we said, would defeat the purpose of homestead protection: "Homestead owners must have the ability to renew, rearrange, and readjust the encumbering obligation to prevent a loss of the homestead through foreclosure." *Id.* (citing *Machicek v. Barcak,* 141 Tex. 165, 170 S.W.2d 715, 717 (1943)).

White contends *Benchmark* is inapposite to this case because it was based on the Texas Constitution as it existed before passage of the home-equity amendment in 1997. If section 50(e) is to have any meaning whatsoever, White argues, it must operate to change the law surrounding the forfeiture of liens. In effect, White contends article XVI, section 50(e) overrules *Benchmark.* But as we have noted, section 50(e) does not discuss equitable remedies. And section 50(e) need not be read to prohibit equitable subrogation of valid liens in order to have meaning. The contractual loan transaction between LaSalle and White involved an "extension of credit" under section 50(e), which the bank here concedes was forfeited by securing the debt with property designated for agricultural use. LaSalle's equitable subrogation claim, though, arises not from the extension-of-credit transaction but from its payment of the pre-existing, constitutionally valid liens, which allowed the bank to step into the shoes of the prior lienholders. *See Oury,* 13 S.W. at 1031. Thus, section 50(e) operates here to invalidate any liens related to the cash-out portion of the loan.

Invalidation of a contractual lien does not preclude equitable subrogation. In *Texas Land & Loan Co. v. Blalock,* we held that, although a home-equity loan was invalid under the Texas Constitution, the lender was entitled to equitable subrogation to the extent of the prior valid purchase-money lien that the loan had been used to discharge. 76 Tex. 85, 13 S.W. 12, 13–14 (1890). In *Faires,* too, we stated that "[o]ne who discharges the vendor's lien upon lands, *even the homestead,* either by paying as surety, or at the request of the debtor, or at a judicial sale, which, for irregularities in the process, fails to convey the title, is entitled to be subrogated to the lien of the creditor to the extent of the payment so made." 31 S.W. at 194 (emphasis added). And again in *Martin,* we reiterated that the refinancing lender which discharged a valid mechanic's lien was entitled to equitable subrogation, even though such a lien on the homestead would otherwise violate the constitution. *Martin,* 88 S.W.2d at 469–70. Throughout our jurisprudence, we have stressed that the doctrine of equitable subrogation works to protect homestead property. Without equitable subrogation, lenders would be hesitant to refinance homestead property due to increased risk that they might be forced to forfeit their liens. The ability to refinance provides homeowners the flexibility to rearrange debt and avoid foreclosure. *Benchmark,* 919 S.W.2d at 661; *Machicek,* 170 S.W.2d at 717. Article XVI, section 50(e) does not abrogate this longstanding common law principle or preclude LaSalle Bank's entitlement to equitable subrogation for the refinance portion of the loan proceeds that were used to extinguish White's constitutionally permissible purchase-money and property-tax liens.

Accordingly, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment in part, affirm in part, and remand to the trial court for further proceedings consis-

tent with this opinion. *See* Tᴇx.R.Aᴘᴘ. P. 59.1.